WESTERN ELECTRO-PLATING COMPANY (a Corporation), Respondent, v. LEWIS HENNESS et al., Appellants.

E. O. Leake and J. J. Leake for Appellants.

Riedmann & Dalessi for Respondent.

LILLIE, J.—This is the third time the present litigation has engaged the attention of this court. Instituted in January of 1958, the action sought an injunction and damages as a result of defendants' assertedly unfair solicitation of plaintiff's former customers, and unfair competition generally. After granting a permanent injunction and awarding damages, the trial court subsequently exercised its powers under section 662, Code of Civil Procedure, and reopened the case on the sole issue of the amount of damages; defendants thereupon appealed from that portion of the judgment granting injunctive relief and also from the order vacating that portion of the judgment assessing damages. Plaintiff's motion to dismiss the appeal from the order was granted; but a similar motion to dismiss the appeal from the judgment in its injunctive aspect was denied. (172 Cal.App.2d 278 [341 P.2d 718].) Upon the filing of the remittitur, the trial court took further evidence on the issue of plaintiff's damages. Paragraph XXIII of the findings of fact was thereafter amended;[1]

---

[1] As amended, paragraph XXIII reads as follows: "That plaintiff has suffered a loss of profits as a result of the appropriation by defendants, and transfer of plaintiff's accounts to defendant Whetnall Plating Company; that as a direct result of unlawful solicitation of

under the judgment as amended plaintiff was given damages in the sum of $32,100, and the scope of equitable relief was modified to conform with this court's direction. Defendants now appeal from the portion of the judgment relating to damages.

The contentions on appeal are two in number. First, it is asserted that the evidence was insufficient to justify any finding that certain preferred customers were unfairly solicited; second, if the fact of such solicitation be assumed, damages in the sum awarded were not established. We believe neither of the above points may be sustained.

Necessarily involved in the first of appellants' points is the question whether the prior appeal from the injunctive portion of the judgment (180 Cal.App.2d 442 [4 Cal.Rptr. 434]) resulted in certain determinations which have become the law of the case. It was there contended that the evidence did not support the findings on which the injunction was based. The several findings are summarized in this court's opinion, including those which bear on the subject of solicitation in general and solicitation of preferred customers in particular. Appellants argued that the facts at bar were not within the scope of the "delivery route cases," contending that the evidence was insufficient to "meet the five conditions laid down in such cases as *Paraco, Inc.* v. *Owens,* 166 Cal. App.2d 777 [333 P.2d 360] ; *Aetna Bldg. Maintenance Co.* v. *West,* 39 Cal.2d 198 [246 P.2d 11] ; *California Intelligence Bureau* v. *Cunningham,* 83 Cal.App.2d 197 [188 P.2d 303]." Of the "five conditions" mentioned in the cited cases, proof of which is a requisite to injunctive relief, two relate specifically to the question of solicitation: (a) the former employee solicited the customers of his former employer with intent to injure him, and (b) the former employee sought out certain preferred customers whose trade is particularly profitable and whose identities are not generally known to the trade. With these "conditions" in mind, we reviewed the evidence and concluded that "The evidence was sufficient to support the findings on which the injunction was granted"; we also concluded that the injunction was "too broad in scope

business by the defendants, gross business in the sum of $321,000.00 was lost to plaintiff and transferred to defendant Whetnall Plating Company; that a reasonable profit on said business so unlawfully solicited and obtained is 10%; that the loss of profits occasioned directly by said unlawful solicitation of business is the sum of $32,100."

in that it prohibits the defendants from receiving business ... which business might be offered to the defendants without any solicitation'' on their part. (P. 450.)

█ The determination by this court that the *form* of the decree (or judgment) required modification in the respects just mentioned has erroneously been seized upon by appellants as supporting the claim that they were not foreclosed, at the further hearing on the issue of damages in the trial court, from again urging the insufficiency of the evidence to establish actionable solicitation of respondent's former customers, particularly certain preferred customers. Because the scope of injunctive relief was limited, say appellants, they should now be permitted to show that the business of various customers was ''received'' and ''not solicited.'' Upon the commencement of said further hearing, the trial court fixed the following ''ground rules'' for the proceeding: ''The sole issue before us this morning is the very narrow issue for which I reopened the case for the taking of evidence solely on the amount of damages. Any other issue than that is not before the Court and would be immaterial. That means that the question of whether or not the plaintiff is entitled to damages is not open and the injunctive relief is not open. It is just the question of the amount of damages.'' The trial court's ruling was correct. As will presently be pointed out, not only was the fact of unlawful solicitation a necessary element in the determination of the prior appeal and the legal effect of such fact thereby established for all subsequent proceedings, but from a procedural standpoint the trial court properly limited the issue to the question of amount of damages.

█ ''The purpose of the enactment of section 662 of the Code of Civil Procedure was to afford to trial courts, sitting without a jury, the right to correct *any* issue, *finding* or judgment that it may have made in the original proceeding.'' (Emphasis added.) (*Nobel* v. *You Bet Mining Co.*, 22 Cal. App.2d 623, 628 [72 P.2d 205].) Other cases where the trial court's order under section 662 limited the issues by vacating only certain of the findings include *Estate of Perkins*, 21 Cal. 2d 561 [134 P.2d 231] and *Bureau of Welfare, Calif. Teachers' Assn.* v. *Drapeau*, 21 Cal.App.2d 138 [68 P.2d 998]; this is consistent, of course, with the principle that the statute must be liberally construed. (*Oliver* v. *Boxley*, 181 Cal.App.2d 471, 478 [5 Cal.Rptr. 468].) █ Appellants suggest that the

earlier order under section 662 had the effect of vacating *all* findings on the question of damages, thus restoring the parties to their original position and making it incumbent on respondent to prove that there had been any actionable solicitation at all compensable in damages.  When section 662 is invoked, however, the true intention of the trial court must be determined from the whole order (in pertinent part set forth below)[2] and not from any isolated phrase appearing therein. (*Roraback* v. *Roraback*, 38 Cal.App.2d 592, 596 [101 P.2d 772].)  It seems apparent that the meaning contended for by appellants may not validly be read into the order under consideration. Additionally, the trial court in the course of colloquy with counsel expressly stated that it was his intention to limit the issues as set forth above; "[T]hat declaration cannot be wholly disregarded nor lightly brushed aside." (*Bastajian* v. *Brown*, 19 Cal.2d 209, 214 [120 P.2d 9].)

 As stated earlier, the prior appeal (*supra*, 180 Cal. App.2d 442) determined the sufficiency of the evidence to support the findings upon which the injunction was granted. Upon the commencement of the further hearing, and during the formulation of "ground rules," the trial court observed that if the prior appeal "passed upon the validity of the findings and conclusions (as to solicitation), then it is the law of the case." Continuing: "If it (didn't), it is open to you on a subsequent appeal. I am going to take the position for this case that the finding is a finding that these particular accounts were solicited and that the sole question is the amount of the loss occasioned by the plaintiff as a result of solicitation."

 In California "the law of the case doctrine is a procedural rule which is generally followed . . . because the orderly processes of judicial procedure require an end to litigation.  In the absence of exceptional circumstances of hardship and injustice the need for attributing finality to

---

[2] "The motion for a new trial is denied and in lieu of granted [granting] the motion for a new trial those portions of the findings and judgment involving the subject or monetary damages and no other are set aside and the case is reopened on the sole issue of the amount of damages for further proceedings and the introduction of further evidence with the same effect as if the case had been reopened after submission and before findings filed or judgment rendered for the sole purpose of hearing additional evidence on the amount of damages to which plaintiff is entitled. This order is on the sole ground of the insufficiency of the evidence to sustain the findings and judgment on the sole issue of the amount of damages . . ."

considered judicial determinations compels adherence to the previous decision." (*Gore* v. *Bingaman*, 20 Cal.2d 118, 122-123 [124 P.2d 17].) ▮▮▮ The fact of unlawful solicitation at bar was judicially determined by us on the previous appeal. It is illogical, therefore, for appellants to argue that such determination was made in a different proceeding relating to a different type of remedy; in this connection, it is asserted that "the only question before (this court) and the only question considered was the sufficiency of the findings to support the injunctive relief."

When the instant litigation first reached this court on the merits, there was (and properly so) but one set of findings, from which separate conclusions of law were drawn respecting the relief to which respondent was entitled. The trial court gave respondent both equitable and monetary relief, for it is the law that under proper circumstances unfair competition may not only be enjoined (Civ. Code, § 3369) but may also justify an award of damages for loss of profits resulting therefrom. (*Gordon* v. *Schwartz*, 147 Cal.App.2d 213 [305 P.2d 117].) "The fact that the plaintiff is entitled to an injunction against unfair competition . . . does not entitle him to a monetary award in the form of damages or an accounting of profits as a matter of right . . . although as a general rule, where an injunction is granted, the defendant will be ordered to account for his profits and it is generally held that both the profits realized by the defendant and the damages suffered by the plaintiff may be recovered." (87 C.J.S. 604-605.) ▮▮▮ ▮▮▮ Unless his competition is fairly and legally conducted, equity will enjoin a former employee from soliciting business from his former employer's customers (*Aetna Bldg. Maintenance Co.* v. *West, supra,* 39 Cal.2d 198, 203); likewise, when a former employee, possessed of customer lists, solicits their trade by asking, suggesting and urging them to buy merchandise from him, "the list of such customers (was) a valuable trade secret and . . . plaintiffs were damaged by defendant's unlawful use thereof . . . They may recover for *all* damages proximately caused by defendant's wrong [citation]." (*Gordon* v. *Landau*, 49 Cal.2d 690, 694 [321 P.2d 456].) ▮▮▮ As stated earlier, the findings as to appellants' solicitation of customers, both before and after the severance of employment, are summarized in our prior decision (*supra,* 180 Cal.App.2d 442, 444-446) and need not again be set forth *in extenso;* suffice to say, they demonstrate the same

course of conduct leading to the result reached in the *Gordon* case. Contrary to appellants' urgings, we did not there conclude (nor even intimate) that the evidence was susceptible of the inference that some of appellants' activities might have been the result of business merely "received" by them in the absence of any solicitation on their part. As was our duty, and to avoid future litigation in the premises by failure to restate clearly the governing principles here applicable, the scope of equitable protection was modified and limited accordingly.

Heretofore we declared that the fact of unlawful solicitation at bar has already been judicially determined. Although there are decisions (in this same area of the law) sustaining injunctive relief in a given set of circumstances but denying an award of damages under the same facts (*Karsh* v. *Haiden,* 120 Cal.App.2d 75 [260 P.2d 633]; *Wood* v. *Peffer,* 55 Cal. App.2d 116 [130 P.2d 220]), they apparently turn on the lack of fraudulent intent or bad faith on the part of the defendant. Such is not our situation, since the trial court expressly found that appellants' operations were "deliberately" carried out "with intent to injure" respondent. The "solicitation" of customers was, therefore, an integral part of the claim for damages, just as it was an integral part of the demand that appellants be restrained from such practices. It follows that the matter of "solicitation" was necessarily and impliedly involved in the prior appeal "without which the first decision could not have been rendered" (*Coats* v. *General Motors Corp.,* 11 Cal.2d 601, 607 [81 P.2d 906]), and the determination of that fact, "although not express, became the law of the case." (*Steelduct Co.* v. *Henger-Seltzer Co.,* 26 Cal.2d 634, 642 [160 P.2d 804].) A decision on the sufficiency and effect of certain findings is a question of law (*Estate of Baird,* 193 Cal. 225, 234 [223 P. 974]); also, it appears that the evidence on retrial would not be materially different but only cumulative; and, of course, the parties are the same.

Interestingly enough, and pointing to the fact that the evidence on retrial would have been cumulative, during the formulation of "ground rules" counsel for appellants argued at some length that he was entitled to show that his clients' transactions or operations from the time of the injunction action up to the then present resulted from business freely offered to appellants without any unfair or unlawful solicitation. The trial court ruled that "it is perfectly proper for

the defendant [*sic*] to show that subsequent to the date of these findings, and I will hear evidence on the fact of a change of conditions, that the business thereafter was not the result of improper solicitation.'' Appellants rested their case without offering any evidence as to this change in circumstances; the trial court could therefore assume, as do we, that the whole question was thoroughly litigated upon the first trial and the appeal which followed.

Appellants' only other contention is that damages were not properly awarded. The problem is similar in many respects to that which confronted us in *Southern California Disinfecting Co.* v. *Lomkin,* 183 Cal.App.2d 431 [7 Cal.Rptr. 43]. There the plaintiff company (defendant Lomkin's former employer) ''demonstrated that it had a fixed volume of business on the route which Lomkin worked and that it had enjoyed the business of its customers for many years.'' Continuing, ''It is reasonable to assume that the plaintiff would have continued to enjoy that patronage for a reasonable time but for the wrongful diversion of the customers to the defendants. Courts need not permit the loss of a substantial right merely because of a claimed uncertainty or difficulty in determining the extent of the damage from such a loss.'' (P. 450.)

Appellants Henness and McCormick left the employ of respondent in the latter part of December, 1957, and the early part of January, 1958, respectively. For the years prior to their departure the gross business of respondent was as follows: Year ending March 31, 1955—$217,000; year ending March 31, 1956—$350,000; year ending March 31, 1957—$471,000. Respondent's business for the period ending March 31, 1958 (three months of which were subsequent to the departure of Henness and McCormick) showed another increase, though not as marked as the three periods immediately preceding: $539,550.69; but for the period ending March 31, 1959, there was a sharp decline to $291,588.20, a total loss of $247,962.49 in gross business. A certified public accountant, produced by respondent, testified that he examined respondent's corporate records back to May 1, 1954 (when the business was started). He plotted the adjusted profit to sales from the May 1954 period up to the time the business was tampered with. This witness also went through the list of respondent's preferred customers named in the findings and then examined the records of Whetnall Plating Company (as prepared by

the latter's certified public accountant) to determine the amount of business that Whetnall had transacted with these customers; he stated that he was able to prepare a ratio of adjusted profit to gross sales. The witness testified that the ratio of net profit to respondent's gross sales was one wherein the net profit factor increased with the corresponding increase in the volume of sales. According to his calculations, the total loss in profit suffered by respondent was the sum of $146,086.

The trial court declined to award damages in such sum; instead, as indicated by the amended finding (fn. 1, *supra*), it took the figures furnished by appellants showing total sales to respondent's preferred customers. These sales having amounted to $321,000 (although respondent states that the correct total was actually $324,276.21), the court adopted a percentage of 10 per cent as a reasonable profit factor and awarded damages, to wit: $32,100. This profit factor was reached despite testimony that if respondent had been able to retain the business which was diverted to its competitor, the adjusted profit ratio would have been 18.5 per cent for the period ending March 31, 1959; 19.8 per cent for the period ending March 31, 1960, and 17.3 per cent for the period ending August 31, 1960. Even the trial court was of the view that the award was quite conservative; thus, in its ruling on the motion for a new trial there was this comment: "The Court: Actually, I feel that in determining the amount of damages, that if I have made any error at all, it was on the side of being too conservative in this case. I tried to arrive at a fair amount of damages, but in view of the evidence as I saw it, and at the time I came to this conclusion, I would not have been surprised that a motion would have been made by the plaintiff."

Appellants, of course, dispute the percentage factor arrived at—with a good deal of vigor, too. For example they say, among other things, that "where the court dug up the 10 per cent deal is anybody's guess—and it could only have been a guess on the part of the court, because there was certainly no evidence to sustain any such percentage"; however, they do concede that "Where plaintiff is entitled to damages the mere fact that the damages cannot be exactly measured does not prevent the court from exercising a discretion in awarding damages." Appellants state that there is a yardstick or formula in this case which would justify an award of no more

than $10,000—$9,630, to be exact; but they arrive at this yardstick after viewing the evidence most favorably in their light, contrary to the accepted rule of appellate practice. This court in *Gordon* v. *Schwartz, supra,* 147 Cal.App.2d 213, determined that the 10 per cent factor, there apparently adopted by the trial court, was sustainable for the reason that "[t]here was testimony that the net profit is always about 10 per cent of the gross sales." (P. 216.) Too, the opinion goes on to observe that "the plaintiffs would not necessarily be limited to such an amount as damages. They were entitled to recover for all damages proximately caused by the defendant's wrong. (Civ. Code, § 3333.)" Upon a careful examination of the entire record, and in view of the evidence heretofore set forth, we conclude that this is a case where the reasoning of *Gordon* is likewise applicable. As in *Southern California Disinfecting Co.* v. *Lomkin, supra,* 183 Cal.App.2d 431, " 'it is clear that some damage to plaintiffs' business was being caused by defendants and "one whose wrongful conduct has rendered difficult the ascertainment of the damages cannot escape liability because the damages could not be measured with exactness." [Citation.]' " (P. 451.)

The judgment as amended below is affirmed.

Wood, P. J., and Fourt, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 9, 1962.